IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| D.W., *by and through his sister and next friend*, LADONNA WOOD, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) 1:19cv1042-SRW<br>) |
| DOTHAN-HOUSTON COUNTY INTELLECTUAL DISABILITIES BOARD, INC., a domestic public corporation, *doing business as* The Vaughn-Blumberg Center, | )<br>)<br>)<br>) |
| Defendant. | ) |

COMES NOW the Plaintiff D.W.,[1] by and through his sister and next friend, LaDonna Wood (the "Plaintiff"), and respectfully files this Complaint and alleges the following:

## INTRODUCTION

1. D.W. is a person with Downs Syndrome who attended the Vaughn-Blumberg Center for almost thirty years in order to take advantage, through his Medicaid benefits, of the life-enhancing programs that the Center provides.

2. Now nearly fifty years old, D.W. attended the Center during the day almost every day for the better part of thirty years. Almost every day, he took the bus to get there and come home.

---

[1] Out of respect for his privacy and his personhood, D.W. asks to proceed under a pseudonym using his initials. A separate motion for leave to proceed will be filed contemporaneously with this Complaint to set out the legal and factual basis for this request more fully.

3. D.W. participated in several of the Vaughn-Blumberg Center's programs for adults with intellectual disabilities. For example, D.W. attended Day Habilitation ("Dayhab") programming and services and also performed work through the John Conti Work Center.

4. Up to and including occasions on or about December 17, 2017, D.W. was repeatedly sexually abused at the Vaughn-Blumberg Center by another individual, J.W, who is also a person with a disability.

5. The Vaughn-Blumberg Center knew that J.W. was sexually aggressive, and that a heightened level of attention and special precautions would be necessary (and required under state law) in order to prevent J.W. from abusing others, such as D.W.

6. Tragically, even though the Vaughn-Blumberg Center and its staff were aware that they needed to take special precautions, both the Center and its staff utterly failed both D.W. and his abuser in failing to follow any reasonable measures whatsoever to protect consumers at the Center from instances of abuse like the ones that D.W. suffered.

## JURISDICTION AND VENUE

7. This Honorable Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). Several claims herein arise under the Constitution, laws, or treaties of the United States.

8. The Court has supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367(a).

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims presented in this case occurred in Houston County, Alabama, which is in the Middle District of Alabama.

## PARTIES

10. D.W. is a man who was born with Downs Syndrome. He is a citizen of the State of Alabama and is over the age of nineteen (19) years old. D.W. has lived with his parents his entire life. He is also cared for by his loving sister, LaDonna Wood.

11. LaDonna Wood ("Plaintiff" or "Ms. Wood") is the sister and next friend of D.W. She is a citizen of the State of Alabama and is over the age of nineteen (19) years old.

12. The Dothan-Houston County Intellectual Disabilities Board, Inc., is a domestic public corporation doing business as the Vaughn-Blumberg Center (the "Vaughn-Blumberg Center" or "the Center"). The Vaughn-Blumberg Center is a resident citizen of the State of Alabama and is established pursuant to Ala. Code § 22-51-1, *et seq*; as such, it is not a state agency for purposes of Art. I, § 14 of the Alabama Constitution of 1901, and its employees are not state agents.

## FACTUAL ALLEGATIONS

### *J.W. Abused D.W. At The Vaughn-Blumberg Center*

13. Over the years, one of the other consumers of services at the Vaughn-Blumberg Center was an individual named J.W.[2]

14. J.W., like D.W., is a person with intellectual disabilities. J.W. is a ward of the State of Alabama.

15. J.W. sexually abused D.W. on several occasions. Most recently, in December 2017, J.W. cornered D.W. alone in a bathroom at the Vaughn-Blumberg Center.

16. J.W. violently, sexually abused D.W. in the bathroom.

---

[2] J.W., like D.W., is a person with a disability. There is no family relationship between the two. Because of the sensitive nature of the allegations, J.W. is identified by his initials for the same reasons as D.W.

17. J.W. threatened that he would kill D.W. if D.W. told anyone what happened.

18. When D.W. returned home from the Vaughn-Blumberg Center, he was visibly upset, and his father asked him what was wrong. D.W. described the sexual abuse he endured in detail. He also described the threat J.W. made to keep D.W. from telling anyone about the abuse. J.W. was extremely upset when he recounted these events to his father.

19. This incident was reported to the Center and its staff, and the police investigated it. The Houston County District Attorney ultimately chose not to prosecute on the grounds that J.W.'s disabilities would likely make it legally impossible to obtain a conviction.

### *The Vaughn-Blumberg Center And Its Employees Knew About The Abuse And Utterly Failed To Prevent It*

20. The December 2017 incident was not the first instance of J.W.'s abuse of D.W.

21. The Vaughn-Blumberg Center's staff has acknowledged that D.W. and his family reported abuse by J.W. on prior occasions. Nevertheless, the Vaughn-Blumberg Center failed to keep adequate records of these incidents or to document any plan for addressing abuse or properly reporting the abuse.

22. In addition to several previous incidents of actual abuse, there were occasions on which J.W. exhibited less serious behavior that was nevertheless troubling and predatory behavior that should have been cause for concern. For example, J.W. would offer D.W. snacks and candy in order to lure D.W. into contact with him. The Defendant was aware of this conduct because the Vaughn-Blumberg Center's staff had caught J.W. doing it, and also because D.W.'s family had reported it to them.

23. J.W. has abused and attempted to abuse other consumers at the Vaughn-Blumberg Center besides D.W.

24. J.W.'s sexual abuse and attempted sexual abuse of D.W. and others were known by the Vaughn-Blumberg Center and its staff, including but not limited to James Ballard and a case worker named Paige Bertram.

25. J.W. is classified as sexually aggressive or "deviant" by the Vaughn-Blumberg Center, and the Center's staff are aware that J.W. is sexually aggressive and needs a greater degree of supervision than most consumers in order to keep him from sexually harassing or abusing others.

26. The people who knew that J.W. had attempted and completed sexual abuse against other consumers, including D.W., included the Executive Director, James Ballard, Paige Bertram, and other staff at the Vaughn-Blumberg Center, including but not limited to office staff and case workers named Tammy Ruth, Tisha Jackson, Angelica, and Debbie.

27. Despite knowing that J.W. had attempted and completed sexual abuse on others, the staff of the Vaughn-Blumberg Center violated accepted and mandatory policies and practices regarding the investigation, reporting, prevention, and management of sexual abuse.

28. The staff of the Vaughn-Blumberg Center failed to follow state and federal laws, guidelines, regulations, and standards with respect to known incidents of sexual assault or attempted sexual assault by J.W., including his attacks on D.W.

29. Rather than following accepted standards and applicable laws with respect to J.W.'s sexual attacks on others, staff members simply chose to informally keep J.W. and D.W. separated during times when the two of them were in the same place at the same time.

30. James Ballard, a Vaughn-Blumberg Center staff member who was responsible for monitoring consumers during the day, knew of the informal agreement among staff members that

D.W. and J.W. should not be together, and it was informally understood among staff members that Mr. Ballard would keep J.W. and D.W. separated.

31. James Ballard, Paige Bertram, Tisha Jackson, and other staff of the Vaughn-Blumberg Center knew about past incidents and reports of abuse but did not document it, nor did they document the informal agreement that D.W. and J.W. should be kept apart.

32. No one notified D.W.'s family of this plan, and no other measures were taken to protect D.W. or other consumers from sexual attacks by J.W.

33. As a result of these complete failures to adequately document abuse or protect consumers from abuse, D.W. was abused by J.W. on more than one occasion.

34. Following his abuse in December 2017, D.W.'s family elected to keep him home until a solution could be implemented that would effectively prevent further abuse.

35. In January of 2018, D.W.'s sister LaDonna and his father Leroy met with staff of the Vaughn-Blumberg Center on two occasions to discuss the abuse and how the Vaughn-Blumberg Center intended to respond to it.

36. The Vaughn-Blumberg Center's staff suggested that it could not implement any plan that would guarantee J.W. and D.W. would no longer come in contact with each other.

37. Incredibly, the Vaughn-Blumberg Center's Executive Director told D.W.'s family that an appropriate solution would be for D.W. to cease using the Center's services, and that he should stay home and seek personal care services. In other words, when confronted with the fact that D.W. had been repeatedly victimized, and that the Vaughn-Blumberg Center knew about the abuse and failed to prevent it, the Executive Director suggested that the solution should be for D.W. to simply stop coming to the Center.

38. In the same meeting, the Executive Director rejected any suggestion that J.W. himself should be the one to have services diminished. The Executive Director also suggested that in order for the Center to take any action, the "allegations" of sexual abuse would have to first result in a conviction of a crime by J.W.

39. No other method for protecting D.W. was considered or offered by the Vaughn-Blumberg Center, except to suggest that if D.W. would come back then the Center's staff would do its best to keep the two separated.

40. D.W. was deeply disturbed by these events and has had to attend counseling as a result of his abuse.

41. D.W. has not returned to the Vaughn-Blumberg Center, despite having gone there for thirty years. The loss of his daily routine has been emotionally devastating to him.

42. J.W. continues to be a consumer at the Vaughn-Blumberg Center and he has abused other consumers since D.W.'s departure.

## CAUSES OF ACTION

### COUNT ONE
### Americans With Disabilities Act / Section 504 of the Rehabilitation Act
### Discrimination on the Basis of a Disability

43. The Plaintiff adopts and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

44. The Americans With Disabilities Act (the "ADA") and Section 504 of the Rehabilitation Act address discrimination against disabled students. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public

entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 likewise provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

45. These provisions of federal law protect individuals such as D.W. from being subjected to peer-on-peer sexual abuse, such as the abuse he suffered from J.W., and they also protect individuals such as D.W. by requiring facilities such as the Vaughn-Blumberg Center to protect people with disabilities from harming others or being harmed by each other.

46. D.W. had a disability which was the basis of the assaults and harassment he suffered.

47. D.W.'s disability made him a vulnerable target for the harassment and assaults he suffered, in that D.W.'s disability rendered him less able to protect himself during attacks.

48. D.W.'s disability made him less able to advocate for himself or to follow up on the complaints that he and his family made to the Defendant.

49. D.W.'s disability made it easier for the Defendant to repeatedly and continually fail to follow basic procedures to prevent abuse, and the Defendant's failures to meet the most basic requirements for protecting consumers like D.W. were due to the fact that D.W. and others similarly situated are people with disabilities.

50. The Defendant was aware that J.W. was sexually aggressive and that he had assaulted D.W. and other people with disabilities in the past. Previous incidents were reported to

the Defendant, and even though the Defendant failed to adequately document those incidents, the Defendant and its staff have admitted knowledge of prior attacks on D.W. by J.W.

51. Furthermore, the Defendant knew that the past assaults were inadequately documented and had not resulted in the Center or its staff taking adequate measures to prevent future incidents of harassment and assault.

52. The abuse and harassment D.W. suffered were sufficiently severe and pervasive to alter the condition of D.W.'s care, benefits, and services at the Center and its programs, and they created an abusive environment for D.W. at the Center. For example, D.W. repeatedly complained about abuse, and Defendant and its staff acknowledged that they were aware of a series of incidents of abuse, but the Defendant and its staff failed to document them or take measures to prevent J.W. from abusing D.W.

53. D.W. wanted to return to the Center following the last incident of abuse, but the Center and its staff refused to assure D.W. and his family that it would institute effective measures to prevent future abuse.

54. The Defendant and its staff knew about J.W.'s abuse of D.W., including incidents which had occurred before December 2017. J.W. was classified as a sexually aggressive individual.

55. The Defendant and its staff knew that their conduct was inadequate to prevent the abuse of D.W. by J.W. Nevertheless, the Defendant was deliberately indifferent to the harassment and abuse D.W. suffered, in that the Vaughn-Blumberg Center and its staff failed to follow laws, regulations, and policies designed to prevent abuse and maintain a safe, harassment-free environment for disabled individuals such as D.W.

56. The Defendant's conduct caused D.W. to be discriminated against on the basis of his disability, in violation of the ADA and the Rehabilitation Act.

## COUNT TWO
### Negligence or Wantonness

57. The Plaintiff adopts and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

58. The Plaintiff was specially vulnerable and, as a result, had a special relationship with the Vaughn-Blumberg Center while he was in the care, custody, and control of the Center and its staff.

59. The Vaughn-Blumberg Center had a duty to provide for the safety and security of the Plaintiff and to protect the Plaintiff from foreseeable harm.

60. As a direct and proximate result of the Vaughn-Blumberg Center's behavior by and through its agents or employees, the Center breached its duty to the Plaintiff and he was caused to suffer personal injury, severe emotional distress, and other resultant damages.

61. The Vaughn-Blumberg Center is vicariously liable for the tortious acts of its agents and employees because no person would have been able to commit such misconduct against the Plaintiff but for the fact that he is a person with a disability who came to the Center for services.

62. The Center negligently failed to implement reasonable policies and procedures or to perform the duties imposed upon it by state and federal laws and regulations in place at the time of the misconduct.

63. As a direct and proximate result of the Defendants' unreasonable conduct alleged herein, the Plaintiff suffered physical injuries and continues to suffer from mental anguish, extreme emotional distress, and other resultant damages.

## COUNT THREE
### Negligent Hiring, Supervision and Training

64. The Plaintiff adopts and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

65. The Plaintiff was specially vulnerable and, as a result, had a special relationship with the Vaughn-Blumberg Center while he was in the care, custody, and control of the Center and its staff.

66. The Vaughn-Blumberg Center owed a duty to all the consumers at its Dayhab programs, including D.W., to properly hire, train, retain, and supervise all staff and employees at the Center.

67. At all times that J.W. sexually abused D.W., he was under the direction, supervision, and control of the Center.

68. At all times that J.W. sexually abused D.W., the employees responsible for implementing protective measures and preventing sexual abuse by one consumer against another were under the direction, supervision, and control of the Center.

69. The Vaughn-Blumberg Center negligently, recklessly, or wantonly breached its duty to all people with disabilities who came to the Center, including D.W., to properly hire, train, retain, and supervise all staff at the Center.

70. As a direct and proximate result of the Defendant's negligent, reckless, or wanton breach of duty owed to D.W., D.W. was sexually abused by D.W., which caused him personal injury and severe emotional distress.

## COUNT FOUR
### Premises Liability - Failure to Warn

71. The Plaintiff adopts and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

72. The Vaughn-Blumberg Center sought and established a special relationship with the Plaintiff, in that he was especially vulnerable at the Dayhab program, and the Center held itself out as being capable of providing a safe and secure environment in which a person with a disability such as the Plaintiff would be safe in the Center's custody or supervision.

73. The Vaughn-Blumberg Center had a duty to keep the Center's premises reasonably safe and to protect the consumers who attended its programs, including D.W., from foreseeable or preventable risks or harms.

74. As part of the duty to keep the Vaughn-Blumberg Center's premises safe, the Defendant had a duty to protect the Plaintiff from the foreseeable harmful or criminal acts of third parties. This included a duty to keep people with disabilities under the Center's own custody, care, and control from being in situations that make them vulnerable to victimization or exploitation.

75. The Vaughn-Blumberg Center negligently, recklessly, or wantonly breached its duties to D.W. by failing to maintain the Center's premises reasonably safe from foreseeable or preventable risks or harms.

76. The Plaintiff was especially vulnerable due to his disabilities at the time the events that are the subject of this Complaint occurred.

77. The Plaintiff, while a consumer of the Vaughn-Blumberg Center's programming and services, was unable to protect himself from being groomed, harassed, assaulted, and eventually raped.

78. The Vaughn-Blumberg Center failed to act reasonably in maintaining its premises in a safe condition, and failed to warn the Plaintiff and his guardians of the dangers of entering the premises.

79. The Vaughn-Blumberg Center is vicariously liable for the tortious conduct of J.W. because J.W. would not have been able to complete these acts but for the fact that he was a consumer at the Vaughn-Blumberg Center at the time of the misconduct

80. Further, the Vaughn-Blumberg Center is vicariously liable for the tortious conduct of its staff because J.W. would not have been able to complete acts of abuse on D.W. but for the fact that the staff members who knew about the risks posed by J.W. and failed to prevent them or follow proper protocols were employed by the Center at the time of the misconduct.

81. The grooming, harassment, and eventual rape of D.W. at the Vaughn-Blumberg Center's premises was not reasonably related to the provision of Dayhab services.

82. The harm the Plaintiff suffered was of a personal nature, entirely unrelated to his status as a consumer of Dayhab services, and was caused because the Center and its staff unreasonably placed the Plaintiff in a position of extreme vulnerability and exposed him to an unsafe environment where he was likely to be sexually assaulted by J.W.

83. As a direct and proximate result of the wrongful conduct of the Defendants alleged herein, D.W. suffered physical injuries and continues to suffer from mental anguish, extreme emotional distress, and other resultant damages.

## COUNT FIVE
### Assault and Battery

84. The Plaintiff adopts and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

85. J.W., a consumer of services at the Vaughn-Blumberg Center, made unwanted, inappropriate overtures toward the Plaintiff and the subsequent, corresponding unwanted abuse of the D.W. legally constitutes assault and battery under Alabama law.

86. J.W.'s misconduct included the unwanted, inappropriate touching of the Plaintiff's person in a rude or angry manner, so as to create in D.W.'s mind a well-founded fear of an imminent battery coupled with the apparent ability to effectuate that attempt if not prevented.

87. The Vaughn-Blumberg Center and its staff are vicariously liable for J.W.'s assault and battery of D.W. because D.W. would not have been able to commit assaults and batteries on the Plaintiff but for the fact that his conduct was facilitated and encouraged by the Vaughn-Blumberg Center on its premises -- specifically, during the Dayhab programming known as the John Conti Center within the Vaughn-Blumberg Center.

88. The Defendant Vaughn-Blumberg Center is vicariously liable for J.W.'s assault and battery of the D.W. because the D.W. was specially vulnerable while in the Center's custody or supervision, in that D.W. was unable because of his disability to defend himself from J.W.'s abuses and assaults.

89. As a direct and proximate result of the wrongful conduct of the Defendants alleged herein, D.W. suffered physical injuries and continues to suffer from mental anguish, extreme emotional distress, and other resultant damages.

## PRAYER FOR RELIEF

WHEREFORE, premises considered, the Plaintiff respectfully prays that this Honorable Court enter an Order:

A. That this Honorable Court enter a judgment in favor of Plaintiff and against the Defendants under 42 U.S.C. § 12132; 29 U.S.C. § 794(a); 42 U.S.C. § 1983 and Alabama law;

B. That damages be awarded to Plaintiff against Defendants in their individual capacities in an amount deemed appropriate by a jury and authorized by law;

C. That attorneys' fees, expenses, and costs of this action be awarded as authorized by law; and

D. That the Plaintiff be awarded such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by a struck jury.

*/s/ Paul H. Rand*
Paul H. Rand (ASB-5595-O99N)
*Attorney for Plaintiff*
Dated: December 11, 2019

**OF COUNSEL:**
ZARZAUR
2332 Second Avenue North
Birmingham, Alabama 35203
T: (205) 983-7985
F: (888) 505-0523
E: paul@zarzaur.com

**PLAINTIFF WILL SERVE PROCESS ON THE DEFENDANT BY CERTIFIED MAIL AT THE FOLLOWING ADDRESS:**

**Dothan-Houston County Intellectual Disabilities Board, Inc.**
℅ Ed Dorsey, Registered Agent
2715 Flynn Road
Dothan, Alabama 36304

*/s/ Paul H. Rand*
Paul H. Rand (ASB-5595-O99N)
Of Counsel